Szymoniak v. American Home Mortgage Svc. Thank you, Your Honor, and may it please the Court, my name is Chris Kenney on behalf of the appellant, Lynn Szymoniak. Szymoniak, this case is a federal false claims action brought by a whistleblower on behalf of the United States government alleging that banks, servicers, and document preparers perpetrated a massive nationwide fraud in order to obtain federal insurance payments. After the five major banks settled these claims for $95 million, the district court held that the claims lacked plausibility because with respect to presentment, they failed to identify specific FHA claims. We believe that's error for three reasons. First, with respect to Rules 8 and Rule 9, the district court's holding confuses the requirements of those two rules. We'd like to discuss that this morning. Second, the district court's holding requiring claim identification as a threshold pleading requirement doesn't further any policy objective that this Court has explained is embodied in Rule 9b. And then third, with respect to the False Claims Act, we believe that the district court's holding threatens to undermine a significant chunk of false claims litigation, which has always been a remedial tool for the federal government to identify and recover fraud proceeds. If it pleases the Court, I'd like to begin with the issue with respect to Rules 8 and Rules 9 and discuss what Rule 9b requires, which this Court, first in Harrison and a number of decisions since, has always required that a plaintiff plead the contents, time, and place of a false representation, who made it, and what was obtained thereby. Now that is in contrast with Rule 8a's plausibility requirement, which is in every case that comes before this Court and every district court, which merely requires enough factual matter taken as true. But don't Twombly and Iqbal require, I mean, they must mean something, and they, as you well know, because we've probably all read those cases about five or six times, but it did heighten the Rule 8 requirement from possibility to plausibility. And then independently, Rule 9 has a heightened pleading standard for fraud claims, so don't you have two different bars that, I mean, those are, the Court has been, the Supreme Court, for better or worse, has been tightening the standards for engaging in intensive and expensive and time-consuming discovery? Yes, Your Honor, and we do not disagree with the way you've described the different pleading requirements, Rule 8 and 9b. Let me attempt to lay out our position with respect to what those two rules would require in this case, in this way. First of all, in a fraud case, okay, the heightened pleading requirement is something in addition to Rule 8a, okay? We agree with that. Now, what we believe has to be required, or what has to be, excuse me, identified in the pleadings is the false representation, and we can talk about what those representations are in this case. Specifically, these are documents assigning loans into trusts that are fraudulent. Fraudulent, the instruments themselves are the product of fraud, and those instruments are a predicate to making a claim to the United States government for insurance payments. Now, let's go to plausibility, which I think is where Your Honor began. With respect to plausibility, okay, the question in this case is whether our allegation that these fraudulent documents were created, were used by trusts and servicers to then recoup insurance proceeds, that they were presented to the United States government, which is the liability-triggering event under the False Claims Act, that we are entitled to a reasonable inference that those were presented, provided that we can identify and lay out an elaborate fraud scheme. Most of these False Claims Act claims are brought by people who are actually insiders to the organization making the false claim. They're employees of a military contractor or something. Your client, the plaintiff here, was not on the inside of any one of these companies. He was not in a position to be any kind of whistleblower or whatever. That seems, at least most of the False Claims Act cases that I remember, there was somebody who was actually an employee or an insider of the company which was presenting the claim. Your Honor, you're correct that that is often the case. It is not a statutory requirement. No, it's not. But it provides some extra assurance or basis. Maybe we understand the basis of the knowledge or how the individual came upon the knowledge or whatever, and it's just one of those indicia. I think Your Honor's concern is correct, especially with respect to how this relates back to plausibility. In many of the cases, and if you look at... But isn't it, wouldn't it, I mean, it's not the only factor. It's not the dispositive factor, but wouldn't it, if you actually had firsthand knowledge or you were an employee of the company or you saw something that was actually funny about the books or whatever, that might be one of those things that spoke to the plausibility? Your Honor, it would absolutely make that allegation plausible. I think the problem is, in many of the false claims cases, even when... It's not a thing quite known, but I'm just saying it's one of those things. Yes, Your Honor, and I don't disagree. I guess the distinction we would make is the rule adopted by the district court here, that at the pleading stage, which FHA claims were submitted to the federal government, that even in cases that Your Honor's referring to, where the relator is an insider and has knowledge based on their employment with the company, many of those claims would also fail because unless you have somebody, take for example... What's wrong with them failing? In other words, it seems to me when you get to the area of fraud, there are some policy considerations that take the pleading requirements further, not only to be able to respond because it's a very serious charge, but this is all... I'm having trouble to see how we are debating this when we have our Tecada ruling on the obtained from the claim, and I gather that this complaint just uses the generalization that we rejected in Tecada, that it described... We acknowledge that you can describe in detail a fraudulent scheme, but you still have to identify a particular claim and the amounts paid in response to that claim, and that's our standing law right now, isn't it? In this circuit? No, Your Honor. I disagree in part, and let me sort of deal with your question in three parts, okay? First, we disagree that this claim does not allege a specific and elaborate fraud scheme, and that is what the district court... No, you allege that, and we rejected that in Tecada as sufficient. What we said, not only that, you have to have a specific claim going to the government and a specific payment being made in response to that, and that's where the district judge in this case evaluated them all. Actually, he denied the summary judgment with respect to some, and those were settled in this case, so he made the careful look, but... Your Honor, if I could deal with Tecada, then we read Tecada as a plausibility holding. Well, sure it is, but it's a plausibility holding with 9B. Yes, Your Honor, but... The court explicitly rejects what you're saying, and Tecada argues that 9B requires that we later plead flax, plausibly alleging that particular identifiable false claims actually were presented to the government for payment, and that's the position that we adopted in that case. Well, and Your Honor, we would read that case differently and ask you to distinguish it without overruling Tecada, not rejecting that rule. Let me just say this. I think the rule in Tecada was appropriate to the facts of that case, and here's why. What was happening in Tecada, remember, it's an off-label drug case, okay? So the first problem is drugs on themselves are not fraudulent on their face. I don't know that the district court actually required, you know, the specific claims. He could have, he said, but he says, nor does she provide facts for a reasonable inference that false claims necessarily were submitted. I mean, what the district court is saying is you have to be more than speculative and And, you know, they want the boilerplate conclusions of fraud to kick the case past the dismissal stage and get into discovery, at which point the odds for settlement go up and everything. And if you allow, the False Claims Act serves an important purpose, but if you carry it that far and allow too much boilerplate to skip through to the discovery stage, you really are increasing enormously the cost of federal contracting in the company, because in order to cover those costs, the contractors have to factor in those potential litigation costs into their bids. Now, so you're trying to balance the value of the False Claims Act in holding down false claims, which rip off the government on the one hand. But on the other hand, you don't want litigation costs to send up contracting prices either. And what we were trying to say in Tecate is you've got to be somewhat specific about this. And the problems that the district court found, one of them, there were a number of them, but one of them is there are eight defendants here, and I wasn't sure that the complaint differentiated among those defendants, which defendant did what. They were all just sort of, you know, somebody took the lasso and just roped them all in. But that, you know, that's not a, that just is kind of a dragnet sort of approach. Well, Judge Wilkerson, if I could disagree with, first of all, the way we read the district court's decision, first of all, I think you have to credit Judge Anderson's finding that the defendants were on notice as to what the fraudulent allegations are. And I also disagree respectfully with the fact that, you know, we have identified not only specific trust, but specific instruments, specific assignments that are the product of fraud. And if I can take this back to Tecate and why I think this Court should distinct You have to take those specific instruments a little further. That is, in order to get a false claim, you have to show that it was insured by HUD, the particular thing. And then one of the, and that the HUD then ended up paying money out in response to the fraudulent claim. Uh-huh. Causation based on the fraudulent statement. Judge Niemeyer, I agree in part and disagree. I mean, the issue in this case is basically whether we have to identify claims in order to satisfy the present, the plausibility of the presentment allegation. We reject that. That is incorrect. It's not what was required in Tecate. And just to go back and- How do you state a false claim? I thought you have to make a claim that, on which the government acted. Uh, and then link the claim, the loss to the claim made. Your Honor, we would have to prove- And I thought that there was a, what Judge Anderson was troubled by is that you really just talked in terms of tens of thousands of claims have been insured by HUD and surely some of them had, went to foreclosure. Well Your Honor- And the fraudulent statement with the payment and the amount of payment and the way you'd get to it, I think, from your point of view, is you would want to see the tens of thousands of transactions and do the matching up later if it can be done. And if the causality can be shown, but that's a little bit backwards. Well, Your Honor, if, and I notice my time is about to expire, if I could just address Judge Niemeyer's question. May I? Thank you, Your Honor. Uh, we, we think we've done a little better than that and, and specifically, we'd direct the court to take another look at the joint appendix at, um, 371 and 372. And I don't want to lose sight of, before I sit down, the fact that- Are those from your complaint? Yes, Your Honor, that is the, that is the operative complaint. I don't want to lose sight of the fact that, um, one of the allegations pled there is the fact that the United States government, um, has identified claims, um, that were submitted to HUD. Our position is simply that we are entitled to, given the obligations of the banks and trustees to submit these claims on behalf of investors, that we're entitled to a reasonable inference that that actually happened. One of the things, there's some odd things about this complaint. And again, I don't think that any one thing is dispositive. It's a multi-factor test on plausibility, in my view. But your, Mr. Simoniak's claim, mortgage was paid off in full, wasn't it? Yes, Your Honor. And, and that's great, but if there's no debt deficiency and there's no default, that couldn't even arise out of his own claim, um, a HUD insurance claim. I mean, there was, there was nothing for an insurance company to collect because the, the mortgage was not in arrears. Your Honor, the, the reason that's included in the complaint is we believe it explains to the court and would, eventually we would, you know, offer it to explain to the jury how Ms. Simoniak became aware of this elaborate fraud. Um, and then of course, you know, her investigation was launched as a result of her personal experience with Deutsche Bank and that foreclosure action. Unless the court has additional questions at this time. Well, I've got you. I, I would, I'm at 370 and 371 and, uh, uh, I'm interested in seeing what you're relying on most importantly. Most importantly, Your Honor, I think that you need to look at our allegation that, um, these trusts have an obligation to, um, to their, um, investors to submit FHA claims in order to recoup investor losses. And there's an expectation that that will happen. Um, you can look at paragraphs 433, I would note that, um, U.S. Bank, which is a, a defendant who has resolved their claims, um, is the trustee of that, um, instrument. And then if you go down to paragraph, uh, 434, uh, Deutsche Bank, which is an appellee in front of this court, is the, um, trustee of that particular trust instrument, um, and it talks about, I mean, these are documents that are extolling the virtues of these investment vehicles because even if the loans go bad, we can recoup the losses by submitting a federal insurance claim. And then, uh, don't you, isn't that the key to the whole case, that you do have to submit a claim based on the fraudulent statement, uh, fraud, fraud, and that the government paid it out? Now, if any one of those loans were paid up in full by the mortgage or, uh, that wouldn't, uh, suffice, uh, provide a basis. And so, uh, it's, it's hard to put it all together. I must say, I tried doing some of this and, uh, I, looking at those paragraphs, I just read them. I'm, I'm not sure I can see that you say these claims were presented to the government and monies were paid. And, and to be clear, Your Honor, we believe, I mean, don't forget about paragraph 435 where the federal government says that did happen and there are servicers that are responsible for those claims, that $12 billion in claims that's at issue in that paragraph, servicers who are still before this court and still have not had their liability discharged. But, but respectfully, I mean, you're, you're correct that the issue is we believe we're entitled to a plausible inference that given the fact that the documents are fraudulent, the only purpose to create these documents is to recoup losses on loans that have gone bad. Um, that, you know, under Rule 8A, we're entitled to that inference. All right. Thank you, Mr. Kenney. Thank you, Your Honor. We appreciate it. You've reserved some time for rebuttal. Thank you, sir. Um, Ms. Gerens? May it please the Court, Mary Gail Gerns, counsel for Saxon Mortgage Services. To be clear, Judge Anderson did properly construe and he faithfully applied the standard that was articulated by this Court in Takeda. He expressly states in his opinion that a relator can satisfy Rule 9B in the context of a False Claims Act claim by alleging either the submission of a specific false claim for payment made to the government or facts from which the government, facts from which the necessarily was submitted. Judge Anderson described the standard exactly the way the Court described it in Takeda, and Judge Anderson proceeded in his decision to give the reasons why the complaint fails to meet that standard. So you think it's a matter of circuit precedent? Yes, Your Honor. There is no basis at all for relator's claim that Judge Anderson somehow misconstrued Takeda and applied a per se rule requiring that she allege a specific false claim. Well, he said he applied a plausibility rule. Excuse me, Your Honor? He said he applied a plausibility rule, not a per se rule. In their briefs, they spend about two-thirds of their briefing to an assertion that Judge Anderson did in fact apply a per se rule and required... You're saying he did not apply... He did not apply a per se rule. He applied the proper standard under Takeda. And he was also correct in concluding that under the standard that's articulated in Takeda, that this is not a close case. The standard is not satisfied here. The relator concedes that she hasn't identified a specific false claim for payment that was made to the government. So the only question that remains is whether the appellee's conduct as alleged in the complaint supports a reasonable inference that a false claim necessarily was submitted. And while this complaint runs some 207 pages and has 781 paragraphs of allegations, it fails to allege facts from which the court can infer that there is an actual false claim. And that's critical to the claim because presentment is essential to liability under the False Claims Act. Liability is not triggered unless a claim for payment was actually submitted, resulting in a call on the government FISC. This is an essential element of the claim, and it must be pled with the same particularity as the underlying scheme that's alleged. And that particularity is completely, there is no connection that's made in this complaint between the allegations of a fraudulent scheme on the one hand and any claims submitted to the government on the other. And as the court put it in Takeda, a relator cannot satisfy Rule 9b merely by describing a fraudulent scheme in detail and then alleging without any factual basis that claims for payment must have been submitted, were likely submitted, or should have been submitted to the government. If page, paragraph 435, I think, is at the heart of this. Those pages, 371, 372 of the record, are at the heart of this. And the question is whether that's sufficient. It says the conduct described in Section 6, which, of course, is the fraudulent conduct above, has resulted in the submission of tens of thousands of false claims by defendants in connection with the FHA insurance program. In fact, subsequent to the filing of the original complaints, there was a study done, and then they showed the number of complaints filed, but none of them, nowhere do they say what percentage or whether any of them were false and what happened with respect to them. So there's a very generalized, you have tens of thousands. You don't have who made them, to whom they were made, and whether they included false claims. Well, they allege they were false claims, tens of thousands. But that's the allegation, and the question is not whether that's plausible, but whether that satisfies 9b, which adds some levels of particularity in a fraud claim. And I think that has to be your argument, isn't it? I mean, you don't want to reach too broadly because they do allege the submission of false claims. The allegations in paragraph 435 relate to an OIG report. That report has nothing to do with any appellation. I know it doesn't. Those are just data from which they ask that an inference be drawn. But they don't allege that any of those submissions were in fact false, and they have no demonstration or they don't even know whether they were in fact false. That's correct. Or whether they resulted in losses. That's correct. And if you look at the allegation where they're getting the tens of thousands is they're looking at the number of FHA claims that were submitted by these five banks. Again, none of them are defended in the action, and the total number of claims is 92,000. That's just the total number of claims. That doesn't say anything about the claims. It certainly doesn't establish that there's any false about any of those claims. Well, they do allege in the beginning of 435 that tens of thousands of false claims were submitted. But that actually connected to the identification. Correct. And that's not even a plausible allegation. That's pure conjecture. There's not a single fact that's alleged to support that allegation. So there's a black hole in the middle of the complaint, and that is what false claims did these defendants submit? What false claims did they present? There's a huge black hole in the complaint. That's glaringly absent, and the element of presentment has not been pled, certainly not with particularity under 9b. But I don't think it's even more likely than not from the allegations in this pleading that would satisfy Rule 8 for the court to be able to infer that a false claim even likely was submitted, but certainly not that a false claim necessarily was submitted. And I wanted to just follow up on something that Judge Niemeyer had discussed earlier. The relator ignores that there are any number of ways in which an allegedly fraudulent assignment would never result in the submission of a claim for FHA insurance, much less a false claim for insurance. A lot of things have to happen. There has to be a foreclosure. The foreclosure has to be completed. At the end of the foreclosure, you need to have a deficiency judgment. If there's a deficiency judgment, then the claim has to be FHA insured. If the claim is FHA insured, in this particular case, to be able to assert a claim under the Because pursuant to Judge Anderson's ruling under the public disclosure bar, any claim before that date, the court has no subject matter jurisdiction. And just to unpack those requirements a bit, there are any number of reasons why a foreclosure might be commenced but might not go all the way to completion. Borrowers enter into loan modifications. Borrowers get successful refinancing. Sometimes they agree to a short sale. They can agree to a deed in lieu of foreclosure. So all those things can happen. And then next, if there is a completed foreclosure, you need a deficiency judgment. The unpaid principal balance on that loan has to exceed the value of the property. If there's $50,000 remaining to be paid on the loan and the property is worth $100,000, you're not going to get a deficiency judgment at the end of that foreclosure. But if those things happen, then you have to look and see, is the loan FHA insured? And by the relator's own allegations, she has an allegation that one-third of mortgage loans nationally are FHA. What you're saying is, you know, there are assignments of mortgages all the time. And people take issue with those assignments. But a questionable or a false mortgage assignment, in the event it was made, is simply not the same thing as an allegation that a false claim has been submitted. And, you know, an assignment of a mortgage is different from a false claim. That's absolutely correct, Your Honor. She doesn't make the connection. And she has to make the connection, and she has to make that connection with the particularity required under Rule 9b. And under this Court's ruling in Takeda, what she needs to allege to be able to satisfy 9b, she hasn't alleged a specific claim, so she needs to be able to allege conduct by the defendants, each one of them individually. And from that conduct, the Court must be in a position to reasonably infer a false claim necessarily was submitted to HUD. And we know that's not the case because there's... What you're saying in a nutshell is that the statute is called the False Claims Act for a reason. For a reason, yes, Your Honor. It sounds like a reason. You know, the Court wasn't that stingy because the Court did allow several of the claims to survive. The court below in this case, Your Honor? Pardon me? Are you referring to the court below in this case? Yes. Yes, that's correct. So the Court allowed the plaintiff, recognized the plaintiff in some instances using examples, was able to allege false claim. That's correct. I guess it was, what, U.S. Bank or somebody. Well, and the information that Relators Council talked about needing for the submission or to be able to tie an assignment with a potential false claim, that information is not unavailable. The Relator told Judge Anderson that they had made FOIA requests. So they wanted to see what claims had been submitted to HUD. That information was available to them. And in the instance that Judge Niemeyer you're referring to, they were able to get FHA submissions, and they were able to allege specific claims to the government. Given all the contingencies that you've described regarding the loan process, it sounds like notwithstanding our holding in Takata that in this particular circumstance, it would have required the plaintiff to actually submit a false claim in order to make their case to get past Rule 9b. Is that your argument? No, that's not my argument, Your Honor. What the Relator would need to allege are facts from which the court, the necessary conclusion the court would make is that that had to lead to a false claim. And what I'm arguing is that. Well, I guess what I'm saying, it sounds like it's almost impossible in this context. Well, in the context, yes, of mortgage assignments where the claim is the submission of a false claim to HUD, yes, I agree. It's not possible. Maybe that's not an improper result, but that's what you're saying, right? That is what I'm saying. I'm saying it because you can't connect the alleged fraudulent scheme in this case. I mean, you might with an individual loan, but from the allegations in this pleading, she hasn't alleged that the preparation of these assignments necessarily results in the submission of a false claim to HUD. And, you know, there's another reason why, in this case, the Relator cannot satisfy the falsity requirement for under the FCA, and that's because the type of insurance claim that she's talking about is a conveyance claim. A conveyance claim is a post-foreclosure claim, and it's addressed in the CFR. HUD has regulations about what's required. The assignment has nothing to do with a post-foreclosure conveyance claim. The claim for insurance is submitted after the... Identifying some causation of a loss and the falsity. Well, there's no causation because what the note holder or the successful bidder in the auction submits to the FHA is the actual deed to the property or other evidence of ownership of the property. At that point, the note is extinguished. The assignment is irrelevant. It's immaterial to the submission of the claim. And Judge Anderson specifically asked for a briefing on this particular issue. The parties briefed the issue, and he properly concluded that in the context of a post-foreclosure conveyance claim, which is the only kind of claim alleged here, that the assignment is of no consequence. So for that reason, too, under the circumstance that are alleged in this complaint, it really is impossible for the relater to be able to assert a claim under the FCA. She's a relater in... In those cases where there are losses after the foreclosure, that results from the loss of value in the property or the nonpayment, but it doesn't result from the assignments of these documents prior to the foreclosure. That's correct, Your Honor. In that circumstance, the note holder having a deficiency submits an insurance claim to HUD, and submits the deed to the property to HUD. The property is deeded to HUD. HUD takes the property. Let me ask you, could... Has, in some circumstances, the plaintiff's alleged a circumstance where the conveyances, the trusting of the assignments and the fraudulent assignments somehow resulted in a false payment on a false claim? When there's a post-foreclosure, it seems to me it may even be a 12B6 problem. They just can't state a claim post-foreclosure because the assignments are irrelevant at that point in time. That's exactly right. Anything further? No, Your Honor. Thank you. Unless you have any questions. Excuse me, sir. I believe that Mr. Kimberly, you have a few minutes. Thank you. May it please the Court. Michael Kimberly for the Bank of New York Mellon, a trustee defendant. Your Honors, we agree the judgment below should be affirmed for all of the general reasons that were just aptly laid out by Ms. Gerns. I want to share just one additional thought on behalf of the trustees. As Ms. Gerns suggested and as Judge Wilkinson also suggested, any plaintiff alleging a cause of action against multiple defendants bears an obligation to allege the basis for liability as against each defendant individually. That means that the plaintiff has to allege the role that each defendant played and how and why that role taken as true establishes liability for that defendant. Now that rule, applicable under Rule 8 just as well as Rule 9b, applies with special force in this case, not only because it's a 9b case, but because this case involves something called the pooling and servicing agreement. This is the agreement that is fundamental to RMDS trusts, and the relator does not disagree that the agreement is incorporated into the complaint and fundamental to the complaint. The pooling and servicing agreement is some 120,000 words long, nearly 400 pages. It details in excruciating detail the roles that each of the various stakeholders in RMDS play. Now, as to trustee defendants, it lays out in plain language, and now I'm going to quote from the relator's own reply brief in this case that, quote, trustees do not handle foreclosure actions, benefit from foreclosure proceeds, or request or retain the benefit of mortgage insurance payments. In addition, Section 3.01 and 8.02 of the PSAs make clear that the trustees do not supervise or control the other stakeholders under the PSA. Now, there's a critical point for two reasons. First, insofar as the relator alleges that the trustees or any other stakeholders have duties that are actually inconsistent with the PSAs, it must be the PSAs that govern. And second, it makes it even more important in this case that the relator come forward with allegations specific to each defendant because the fact of the matter is what she alleges as to the trustee defendants is simply inconsistent with the very limited duties that are imposed upon them by the PSAs. RMDS trustees have nothing to gain by submitting or being involved in the submission of fraudulent documents in connection with state court foreclosures, and they also have nothing to gain in connection with submitting claims for FHA insurance. And so what it means is that it's just implausible to think that they would be part of a broad scheme that would expose them to the enormous liability of treble damages when they simply had nothing to gain from it, doing nothing more than just looking at the duties that they have under the PSAs. And so for that reason, frankly, that's a trustee-specific reason, but also a general reason to affirm the judgment below that the complaint simply does not adequately distinguish the defendants and the roles that they played as it is required to do under Rule 9b. Thank you. Thank you. Ms. Van Gilder, you get your chance, Mr. Kenney. Don't worry about that. Your Honor, first I apologize for breaching the etiquette that there should be two people speaking, and we are asking your forbearance to allow a third speaker. And as Judge Ellis would say in the concession to the shortness of life, I will be very short. You've almost used up your one minute. I'm here only to underscore that we are all individual defendants and that the liability has to be pled as to each individual. DOCX stopped its services in 2009, and there is nothing that connects a 2000, a pre-2010 statement, even if it was for the purposes of this meeting a false or fraudulent assignment, to a post-2010 submission to HUD. Who do you represent? DOCX and LPS. And with that, my time is up. All right. Thank you. Now, at last, come on up. Thank you, Your Honor. Very briefly, I'd like to cover just a couple of points if I could. First, I mean, we heard that in the view of our friends from the other side that it basically is impossible to bring this case into court. Well, I guess this is a question that might challenge the particularity. It may or may not be right, but there is the scenario, and we've had several of these types of cases. There is the scenario where the loss on a particular loan is caused either by the – well, it's caused by the nonpayment, but then the loss is actually caused by the lack of value in the property. And the question is, how do we link up the fraudulent conduct among the trustees and the assignments to that particular loss if that's the loss being paid by HUD? And if it's post-foreclosure, it's hard to imagine any loss attributable other than to the nonpayment plus the loss of value in the property. And if the property had twice the value of the loan and there was no loss there, we wouldn't be talking about a false claim, right? If there was no loss, you've got to have loss, right? No, Your Honor. And let me – I disagree. And what triggers liability in the case is the presentment of a false instrument attempting to recoup funds. And so let me say this. First of all – It's a false instrument related to the assignments and the pooling agreements and so forth as opposed to the execution of the actual deed of trust and note. It is. You're correct in the sense the falsity here is instruments that represent that individuals who were calling on those loans had a right to do so. And we disagree with our friends on the other side that the fraudulent instruments at issue here are not submitted to HUD. They are submitted to HUD. It is material. And, of course, materiality would be something that we'd deal with down the road. So we have a difference about that. I would also say, you know, the United States government wants this claim to go forward. They have exercised their veto with respect to the public disclosure doctrine. And, of course, they've taken $95 million from five of the defendants, and they have also entered into a non-prosecution agreement for $45 million with LPS, which now owns DOCS and acquired them. The other point I'd make is this. Our concern is, our fundamental concern, is that Judge Anderson's rule that we had to identify individual FHA claims is not just going to bar this case. It's going to bar a number of false claims cases. One example would be a very common example would be upcoding in medical practices where the nurse or the physician knows, going back to Judge Wilkerson, to your question earlier, they know. They saw that it was upcoded. They met with the patient. They know that the chart. We've had those cases, and we always have. Before us, the records where the upcoding was done, and an expert who's gone through and said these were upcoded and should not have been upcoded, but we have the particularity. And, Judge Niemeyer, you're right. The records themselves establish the particularity. But the relator, if it's a physician in the exam room who does not submit the bill to Medicare, they do not have the personal knowledge. And this Court has always allowed a reasonable inference that, of course, the medical practice, if they're upcoding the charts, they didn't just turn around and throw them in the trash. Of course they submitted them to Medicare because that was the whole purpose of creating the fraudulent instrument. And that's exactly what has happened in this case. And so we respectfully submit that if this claim can't go forward, that there is a number of areas of false claims litigation where, Judge Wilkerson, and, again, going back to your concern about insiders, insiders would not be able to bring their claims into court, even though they have personal knowledge because they don't work in the billing department. I didn't mean to suggest that that alone was any kind of dispositive factor. I think that there are a variety of things here, but we don't want to preclude legitimate false claims presentation. But there's a danger on the other side of just blowing open the whole thing and just throwing the gates wide open. Because if we were to say that Judge Anderson was wrong here, we would essentially be saying that these sorts of false claims acts, complaints could proceed and go forward without really much particularity at all about what false claims were presented and by whom. And it really, you know, I mean, just sometimes, you know, we can have a real good discussion touching on a lot of things, but it can all boil down to a fairly straightforward point. And the fairly straightforward point here is that there have to be false claims, and they have to be submitted, and they have to be submitted by actual people or by actual companies. And, you know, prefatory behavior and what's taking place between other parties and private parties and the rest, you know, it just, you can't go forward by saying that there's smoke where there's fire. You have to identify the claims. That's the nub of it. And without that, we just throw the gates open wide. Your Honor, respectfully, we disagree that we have to identify the claims as a threshold pleading matter. And here's why, you know. Well, you have to, as the district court said, you have to supply plausible inferences that the claims were made. But it's got to be something more than boilerplate and speculation. That's the problem. I agree, Your Honor. And we think that this Court can credit Judge Anderson's conclusion that the fraud was particularly pled, that they have been on notice since a month after this case was filed as to what allegations, what the allegations were. They could defend against those claims. The only question for the Court, in our view, is whether we also have to do what was done with those three examples with respect to U.S. Bank, which is identify an FHA claim number. Ms. Simoniak has significant knowledge as to the scope of the fraud. The one thing, because of her position in this case and the position of many relators in false claims cases, is she is not in a position to know those individual FHA claim numbers. So we don't think that this Court's precedent has ever required that. We respectfully ask you reverse. Thank you so much. Thank you, Your Honor. And we will adjourn court, and we will come down in Greek counsel.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz